UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SARAH A. PORTER,

    Plaintiff,

       v.                                        Civil Action No. 11-2304 (JEB/AK)

CAROLYN COLVIN,
Acting Commissioner,
Social Security Administration,

    Defendant.

**MEMORANDUM OPINION**

    On May 8, 2013, Magistrate Judge Alan Kay, to whom this Social Security dispute had been referred for full case management, issued his Report and Recommendation. He recommended that the decision of the Administrative Law Judge denying Plaintiff Social Security Income (SSI) benefits should be affirmed in part and remanded in part. Defendant, the Acting Commissioner of the Social Security Administration, has filed Objections as permitted under Local Civil Rule 72.3(b). Finding that the Report strikes the appropriate balance, the Court will adopt it and remand the case for further proceedings.

**I.**    **Background**

    The full factual background of the case is set out in detail in the 27-page Report. A brief recap here will suffice. On March 24, 2005, Plaintiff, then a photo technician for CVS Pharmacy, was involved in an automobile accident on the New Jersey Turnpike. See Administrative Record (AR) at 222. She suffered a fracture of the base of the fifth metatarsal of her right foot, as well as contusions of her lung, C5-C6 disc herniation, C4-C5 disc bulging (developing mild disc-degenerative disease), and possible cord edema. Id. at 261-62. As a result

of these injuries, Plaintiff initially filed for SSI benefits on April 13, 2006, and ultimately applied for benefits for the closed period from March 24, 2005, to December 31, 2006, claiming that these injuries limited her ability to sit or stand and caused her constant pain. Id. at 78, 111-19.

This claim was first denied on July 31, 2006, and again on April 27, 2007. Id. at 36. Porter thereafter filed a timely request for a hearing on June 14, 2007, and one was held before an ALJ on February 7, 2008. See id. The ALJ issued his decision on March 28, 2008, denying Plaintiff's disability on the ground that she was capable of sedentary work. Id. at 36-46.

Plaintiff appealed this decision to the Appeals Council, which issued an Order Remanding Case to Administrative Judge on January 29, 2010, directing the ALJ to: (1) "Evaluate the claimant's mental impairment"; (2) "Further evaluate the claimant's subjective complaints"; (3) "Obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairments"; (4) "Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence . . . [which includes] evaluat[ing] treating source opinions . . . and nonexamining source opinion . . . and explain[ing] the weight given to such opinion evidence . . . [p]articularly . . . to the opinion of treating sources Drs. Bruce J. Ammerman and Charles F. Colao"; and (5) "If warranted by the expanded record, obtain supplemental evidence from a vocational expert . . . ." Id. at 50-51 (emphasis in original).

On remand, the ALJ held a supplemental hearing and issued his second decision on January 26, 2011, again denying Plaintiff's disability based on a finding of capacity to perform existing work in the national economy. Id. at 19-29. Plaintiff appealed this decision, and on October 21, 2011, the Appeals Council denied her request for review, id. at 8-11, making the ALJ's January 2011 ruling the Commissioner's final decision.

Having exhausted her administrative remedies, Plaintiff sought judicial review of this decision under 42 U.S.C. § 405(g). This Court referred the dispute to Magistrate Judge Kay on January 3, 2012, for full case management. See Referral Order, Jan. 3, 2012. The parties then cross-moved, respectively, for reversal and affirmance. Plaintiff claimed that the "ALJ abused his discretion and reached a conclusion that is arbitrary, capricious, unsupported by substantial evidence, and contrary to law." See Pl.'s Mot. at 6. She alleged two principal errors by the ALJ: (1) his conclusion that the limitation arising from her mental impairment was "moderate," and (2) his determination of her Residual Functional Capacity (RFC), which entailed a negative credibility finding regarding her symptoms and a grant of little weight to the opinions of her treating physicians. See id. at 6-13. Defendant responded that the ALJ's decision was "supported by substantial evidence and was reached through the proper application of the law," and it should therefore be affirmed. See Def.'s Mot. for Affirm. at 17.

In his May 8, 2013, Report, Magistrate Judge Kay recommended that each Motion be granted in part and denied in part. See R&R at 26. Specifically, he recommended that (1) the ALJ's assessment of Plaintiff's mental impairment should be upheld, and (2) his assessment of Plaintiff's RFC should be reversed and the case remanded to the Commissioner for further proceedings. Id. Defendant timely filed Objections to the Report on May 21, 2013, pursuant to Local Civil Rule 72.3(b), asserting that the Magistrate Judge erred in recommending remand on the issue of Plaintiff's RFC. See Def.'s Obj. at 1-2. Plaintiff, meanwhile, filed a Response on June 5, 2013, seeking to have the Report adopted in full. See Pl.'s Resp. at 1.

## II.     Legal Standard

Local Civil Rule 72.3(c), which mirrors 28 U.S.C. § 636(b)(1), states that "[a] district judge shall make a *de novo* determination of those portions of a magistrate judge's findings and

3

recommendations to which objection is made as provided in paragraph (b)." See, e.g., Winston & Strawn LLP v. FDIC, 841 F. Supp. 2d 225, 228 (D.D.C. 2012) (district court must conduct *de novo* review of objections to magistrate judge's report and recommendation). The Supreme Court has determined, conversely, that the federal rules governing review of the recommendations of a magistrate judge, as provided under § 636(b)(1)(C), do not require a district judge to review those portions of a magistrate judge's report not objected to. See Thomas v. Arn, 474 U.S. 140, 150-51 (1985). In sum, the district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see also LCvR 72.3(c).

Pursuant to Section 205(g) of the Social Security Act, district courts review decisions of the SSA Commissioner, made through the ALJ, to determine whether his findings are supported by substantial evidence in the record. See 42 U.S.C. § 405(g). The Court must uphold determinations of the ALJ "supported by substantial evidence and . . . not tainted by an error of law." Smith v. Bowen, 826 F.2d 1120, 1121 (D.C. Cir. 1987); Butler v. Barnhart, 353 F.3d 992, 999 (D.C. Cir. 2004). "Substantial evidence" under the Social Security Act "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . ." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted). It is "more than a scintilla, but . . . something less than a preponderance of the evidence." Fla. Gas Transmission Co. v. FERC, 604 F.3d 636, 645 (D.C. Cir. 2010) (citation omitted).

The standard of review in Social Security cases calls for "considerable deference" to decisions rendered by the ALJ and Appeals Council; nevertheless, the reviewing court "remains obligated to ensure that any decision rests upon substantial evidence." Davis v. Shalala, 862 F. Supp. 1, 4 (D.D.C. 1994). The reviewing court must also determine whether the ALJ "has

analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits." Lane-Rauth v. Barnhart, 437 F. Supp. 2d 63, 65 (D.D.C. 2006) (quoting Butler, 353 F.3d at 999) (internal quotation marks omitted). While the ALJ is "entitled to weigh conflicting opinions and to make his own assessment of their credibility," see Brown v. Bowden, 794 F.2d 703, 705 (D.C. Cir. 1986), the ALJ "cannot merely disregard evidence which does not support his conclusion." Martin v. Apfel, 118 F. Supp. 2d 9, 13 (D.D.C. 2000). "Because the broad purposes of the Social Security Act require a liberal construction in favor of disability," evidence is viewed in the light most favorable to the claimant. Davis, 862 F. Supp. at 4. The Court, however, "is not permitted to re-weigh the evidence and reach its own determination." Maynor v. Heckler, 597 F. Supp. 457, 460 (D.D.C. 1984).

**III.   Analysis**

The Magistrate Judge in this case made two recommendations regarding the ALJ's decision. First, he recommended that the determination that Plaintiff was not mentally disabled be upheld. See R&R at 13-14. Neither party challenges this finding, see Pl.'s Resp. at 1, and the Court sees no reason to upset this portion of the Report, particularly since the ALJ's decision in finding that Plaintiff's mental impairment did not "meet or equal the requirements set forth in the Listing of Impairments" was clearly based on substantial evidence. See AR at 22. Second, Magistrate Judge Kay recommended that the ALJ's decision should be reversed and remanded on the issue of Plaintiff's Residual Functioning Capacity. This determination is what Defendant objects to. See Def.'s Obj. at 1-2. The Magistrate Judge specifically recommended reconsideration of Plaintiff's RFC during the claimed period of disability with respect to two issues: (1) "the appropriate assignment of weight to the opinions of Plaintiff's treating sources"; and (2) the evaluation of Plaintiff's "subjective statements regarding her symptoms" in relation

to the "medical records in this case." R&R at 26.  Before discussing Plaintiff's RFC and these two specific issues, the Court will briefly explain how disability determinations are made.

      A.  <u>Disability Determinations</u>

To qualify for SSI under the Social Security Act, a claimant must establish that she is "disabled." 42 U.S.C. § 1382(a)(1).  An individual is considered "disabled" if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." <u>Id.</u> § 1382c(a)(3)(A).  Additionally, an individual can be determined to be disabled "only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." <u>Id.</u> § 1382c(a)(3)(B).

The SSA employs a five-step sequential evaluation process to determine whether a claimant is disabled, as defined by the Social Security Act in 20 C.F.R. § 404.1505.  <u>See, e.g.</u>, <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987); <u>Stankiewicz v. Sullivan</u>, 901 F.2d 131, 133 (D.C. Cir. 1990).  First, the claimant must show that she is not presently engaged in a "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i).  Second, she must show that she has a "severe medically determinable physical or mental impairment." <u>Id.</u> § 416.920(a)(4)(ii).  Third, the claimant must show that her impairment meets or equals an impairment listed in Appendix 1 to the Commissioner's regulations. <u>Id.</u> § 416.920(a)(4)(iii).  If the claimant's impairment is listed, then she is conclusively presumed disabled and the inquiry ends. <u>Id.</u> § 416.920(d).  If the impairment is not listed, the Commissioner moves on to the next step, but must first determine the claimant's RFC, <u>id.</u> § 416.920(e), which reflects "what an individual can

still do despite his or her limitations." Ross v. Astrue, 636 F. Supp. 2d 127, 132 (D.D.C. 2009). Fourth, the claimant must show, based on the RFC, that her impairment prevents her from performing her "past relevant work." 20 C.F.R. § 416.920(a)(4)(iv). Fifth, once the claimant has satisfied the first four steps, the burden shifts to the Commissioner to show that the claimant is capable of "mak[ing] an adjustment to other work" based on her RFC, age, education, and work experience. Id. § 416.920(a)(4)(v); Butler, 353 F.3d at 997 ("The claimant carries the burden of proof on the first four steps.").

The dispute here stems from determinations made under Step 3 of this assessment. In addressing the ALJ's specific findings under this step, the Court bears in mind that it is "not to determine . . . whether [Plaintiff] is disabled," but to "assess only whether the ALJ's finding that [Plaintiff] is not is based on substantial evidence and a correct application of the law." Butler, 353 F.3d at 999.

### B. The RFC Determination

Where, as here, a claimant's impairment is not listed in the Commissioner's regulations, Step 3 of the disability analysis requires the ALJ to determine her RFC. See 20 C.F.R. § 416.920(a)(4)(iii) & (e). Under the authority of the Commissioner, the SSA publishes Social Security Rulings that "are binding on all components of the Social Security Administration. These rulings represent precedent[ial] final opinions and orders and statements of policy and interpretations that [the SSA has] adopted." 20 C.F.R. § 402.35(b)(1). According to Social Security Ruling (SSR) 96-8p, "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Titles II & XVI: Assessing Residual

Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184, at *2 (S.S.A July 2, 1996). According to SSR 96-8p, RFC is "assessed . . . based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' . . . submitted by an individual's treating source or other acceptable medical sources." Id.

In addition to the requirement that the RFC assessment "must be based on all of the relevant evidence in the case record," id. at *5 (emphasis in original), SSR 96-8p also establishes "narrative discussion requirements" that direct the ALJ to explain, in writing, (1) the weight assigned to medical opinions in determining RFC and (2) the credibility of a claimant's symptoms. Id. at *7; see, e.g., Mellon v. Astrue, No. 08-2110, 2009 WL 2777653, at *11 (D.S.C. Aug. 31, 2009) ("The Ruling also requires specific discussion of (*i.e.,* writing about) credibility determinations made in connection with testimony about the nature and extent of a claimant's symptoms and/or pain and their affect on RFC as well as decisions relating to the weight given to relevant medical reports.").

The Magistrate Judge here concluded that the ALJ fell short on each element of the narrative-discussion requirements – namely, that (1) the ALJ failed to properly weigh the medical opinions of treating physicians, see R&R at 25, and (2) the ALJ's challenge to Plaintiff's credibility regarding her symptoms was "not supported by substantial evidence." Id. at 17. In requesting that the Court decline to adopt the Report, Defendant objects to both of these findings. Because the Court must conduct a *de novo* review of all objections to the Report, Winston, 841 F. Supp. 2d at 228, these two objections will be considered separately.

*1. Weight Given to Medical Opinions*

Medical opinions are to be assessed according to the standard set out in SSR 96-8p:

> The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.
>
> Medical opinions from treating sources about the nature and severity of an individual's impairment(s) are entitled to special significance and may be entitled to controlling weight. If a treating source's medical opinion on an issue of the nature and severity of an individual's impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, the adjudicator must give it controlling weight.

SSR 96-8p at *7.

Precedent in this Circuit, moreover, requires the ALJ to grant substantial weight to the reports and opinions of a claimant's treating physicians. See Butler, 353 F. 3d at 1003 ("Because a claimant's treating physicians have great familiarity with [her] condition, their reports must be accorded substantial weight.") (citation omitted) (internal quotation marks omitted). Consequently, a "treating physician's report is binding on the fact-finder unless contradicted by substantial evidence." Id. Similarly, 20 C.F.R. §404.1527(c)(2) states that "[g]enerally, we give more weight to opinions from [a claimant's] treating sources, since those sources are likely to . . . provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) . . . ."

Where an ALJ finds that controlling weight should not be afforded to the opinions of a claimant's treating physicians, he is directed by regulation to apply a series of factors to determine what weight should be granted to those opinions in accordance with the "treating physician rule." See 20 C.F.R. § 404.1527(c)(2). These factors are: (1) examination relationship; (2) treatment relationship; (3) length and nature of treatment; (4) supportability of treating physician's opinion by medical sources; (5) consistency of the opinion with the record as

9

a whole; (6) whether the opinion was rendered by a specialist; and (7) other evidence brought to the attention of the ALJ. Id.

In its January 2010 remand, the Appeals Council directed the ALJ to evaluate and assign weight to the opinions of Plaintiff's treating and non-treating physicians, with particular attention to the opinions of her two treating physicians, Drs. Ammerman and Colao. See AR at 49. The ALJ appears not to have followed this directive, affording little deference to certain opinions contained in reports by Drs. Colao (March 28, 2005, April 11, 2005, April 18, 2006, September 12, 2006, December 22, 2006), Ammerman (January 15, 2007), and Quraishi (October 3, 2006), another treating physician. See id. at 27. The ALJ's justification for disregarding these opinions of Plaintiff's treating physicians was that they had each opined on Plaintiff's disability, and "determinations of disability are an issue reserved to the Commissioner of Social Security." Id. Other medical reports by Drs. Colao, see id. at 233, 234, 235, 236-37, 238-39, 240, 241, 242, 245, 246-47, 248, 249-50, 251, 255-56, and Quraishi, see id. at 216-17, 218, 219, 220, went unaddressed.

While dismissing the above opinions, the ALJ in contrast afforded considerable weight to the 2010 report by Dr. Joseph Fermaglich, prepared several years after Plaintiff's claimed period of disability and without personal examination of Plaintiff. See id. at 26. Dr. Fermaglich, in completing his Medical Source Statement of Ability to Do Work-Related Activities, see id. at 348-58, cited only Dr. Ammerman's October 24, 2006, report and ultimately concluded that Plaintiff "[q]ualifies for regular work. No restriction applies." Id. at 358. The ALJ also substantially relied on the opinion of Dr. Jacqueline McMorris, dated July 31, 2006, who concluded that Plaintiff was "[p]artially credible" without further explanation, id. at 26-27, 198-203, and on Dr. Isabel Pico's affirmance of Dr. McMorris's assessment. Id. at 27, 268. Certain

reports by Dr. Colao issued in November and December of 2006, toward the end of Plaintiff's period of claimed disability, were also heavily considered. See id. at 26, 226-29, 233. The ALJ assigned weight to these medical opinions based on their consistency with "conservative treatment and medical images showing only minimal degradation in [Plaintiff's] spine" and "the above stated residual functional capacity." See id. at 26-27.

In reviewing the ALJ's conclusions, Magistrate Judge Kay determined that, in effect, he had given "little weight to the medical opinions [of] Plaintiff's treating physicians . . . and he [had] relied instead upon reports by non-examining physicians." R&R at 24-25. The Magistrate Judge further noted that, in doing so, the ALJ had failed to apply the "treating physician rule" "to determine what degree of weight should be assigned to the opinion" of a treating physician, if it is not given controlling weight. Id. at 25. In several instances where the "ALJ appropriately rejected the determinations of disability in [certain] medical reports pursuant to 20 C.F.R. § 404.1527(d)(1)," the Magistrate Judge found that his rejection of opinions by treating physicians in their totality had gone too far because he had "also disregarded the substantive information contained in these reports." See id. at 23 n.21. Based on these findings, the Magistrate Judge correctly concluded that the ALJ had neither given controlling weight to the opinions of Plaintiff's treating physicians nor "provide[d] an adequate rationale for his failure to do so," thereby "fail[ing] to properly evaluate both non-medical and medical evidence that contradicted his RFC assessment." Id. at 25.

Defendant has objected to the Magistrate Judge's findings on several grounds. First, Defendant contends that the ALJ's heavy weighting of Dr. Fermaglich's opinion was justified, noting that he made "adjustments to that opinion weighing in Plaintiff's favor." Def.'s Obj. at 5-6. No matter how the ALJ weighed Dr. Fermaglich's opinion, he still needed to accord

controlling weight to Plaintiff's treating physicians or sufficiently explain why he did not. Brown, 794 F.2d at 705-09. In addition, modifying an opinion because the ALJ "clearly disagreed" with its conclusion militates against granting great weight to that opinion above those of treating physicians. See Def.'s Obj. at 5-6.

Second, Defendant attempts to deflect the Magistrate Judge's criticism of the great weight granted to the opinions of Drs. McMorris and Pico by virtue of their qualifications as "experts in the disability program . . . [whose] opinions are valuable to adjudicators." See id. at 6-7. Although "the State agency medical consultant's job is not to examine claimants," Defendant submits that "[b]oth have medical degrees and the Social Security Administration has found them qualified to render opinions about claimant functioning." Id. at 7. Again, Defendant misapprehends the weighing issue at hand, which relates to the "treating physician rule." See 20 C.F.R. § 404.1527(c). Specifically, it is not the qualifications of these medical experts that have been called into question, but rather the great weight given to their opinions, as non-treating physicians, in contrast to the limited deference granted to the opinions of treating physicians.

Third, Defendant suggests that, because the ALJ incorporated findings by Plaintiff's treating physicians, "it is not clear what benefit would result from remanding the case to change or articulate differently the assignment of weight given to [their] opinions . . . ." Def.'s Obj. at. at 8. She makes a similar argument for not applying the requisite regulatory factors in determining the weight to be granted to the opinions of these physicians. Id. at 6, 8-9. This is not some technical failing, however. Weight was erroneously assigned to medical opinions based on consistency with "conservative treatment and medical images showing only minimal degradation in [Plaintiff's] spine" or "the extent [to which an] opinion is consistent with the above residual functional capacity . . . ." See AR at 26-27. The ALJ, in other words, put the cart

before the horse.  Weighing medical opinions is one factor in the determination of RFC, not the other way around.  See SSR 96-8p.

Because none of Defendant's objections is ultimately persuasive, the Court agrees with Magistrate Judge Kay's determination that the ALJ failed to properly weigh medical opinions pursuant to SSR 96-8p and 20 C.F.R. § 404.1527(d)(1).  See R&R at 20-25.

### 2. Evaluation of Plaintiff's Symptoms

A separate recommended basis for remand here concerned the ALJ's analysis of Plaintiff's symptoms.  A symptom is defined as "an individual's own description of his or her physical or mental impairment(s)." Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, SSR 96-7p, 1996 WL 374186, at *2 (S.S.A July 2, 1996).  A claimant's statements about her symptoms are not themselves sufficient to establish the "existence of a physical or mental impairment or that the individual is disabled," id.; instead, the RFC determination requires a two-step process to assess symptoms:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the individual's pain or other symptoms. . . . Second . . . the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.

Id.; see 20 C.F.R. § 404.1529 (similarly articulating this two-step process).  Non-compliance with SSR 96-7p warrants reversal of a decision of the ALJ, even if evidence suggests his conclusions are ultimately correct.  See Lechner v. Barnhart, 321 F. Supp. 2d 1015, 1026-27, 1030 (E.D. Wis. 2004).

With respect to the first step, the ALJ determined that Plaintiff's impairments "could reasonably be expected to produce the types of symptoms alleged." AR at 25.  Specifically, he

found that Plaintiff had two severe impairments during the period in question: a spinal condition and dysthymia (depression), see id. at 22; he further summarized her symptoms as, *inter alia*, an inability to "sit, stand, walk, or move about comfortably for more than two hours per day because of her injuries and related pain . . . throughout her entire body five out of seven days in a week . . . [with] side effects from pain medications including fatigue, weakness, nausea, delayed comprehension, and slurred speech." Id. at 24. Because this first step is not in dispute, the Court will focus its attention on the second step, concerning the limiting effects of Plaintiff's symptoms. See SSR 96-7p.

In the second step, the ALJ must look to the claimant's credibility regarding the alleged limiting effects of her symptoms as they relate to the medical evidence in the record. See Butler, 353 F.3d at 1005. This evaluation must be "based on a consideration of the entire record," and statements "may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7p at *1; see 20 C.F.R. § 404.1529(c)(2). This is because "symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone." SSR 96-7p at *3; see 20 C.F.R. § 404.1529(c)(3). The determination by the ALJ "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." SSR 96–7p at *2; see Butler, 353 F.3d at 1005.

Here, Plaintiff's statements indicate that she was unable to return to school or work because of her pain, see AR at 172-80, 186-87, 296-97, 299-301 302, 325; could not sit, stand, or walk for more than two hours a day, see id. at 152-54; could not reach, lift, or bend, see id. at

14

137, 138, 155; and required assistance to care for her children. See id. at 154, 160-65. The ALJ nevertheless found that Plaintiff's statements of pain and limitation were inconsistent with the medical record because "[m]edical images show[ed] **mild** scoliosis, **mild** degeneration, and a **small** cervical disc herniation [and] [t]he **treatment was routine and conservative**." AR at 25 (emphasis in original).

The ALJ does not, however, appear to have analyzed the totality of medical evidence, particularly those portions that undermine his characterization of the record. In his January 6, 2006, examination of Plaintiff, Dr. Quraishi found tenderness of the "spinous process of C5, C6, C7, but mainly along the levator scapula and trapezius," resulting in movements that were "limited and painful." Id. at 214. He also found "diminished sensation" along portions of Plaintiff's right side and commented that "[i]t hurts [Plaintiff] when she has to sit or stand for long periods [and] [b]ending and lifting will bother her." Id. Dr. Quraishi recommended physical therapy and sent Plaintiff for MRI scans. Id. at 214-15. On March 21, 2006, Dr. Mathews examined Plaintiff and found "moderately severe tenderness starting in [Plaintiff's] lower cervical spine," "weakness globally in both legs," a "medium sized herniation at [C]5-6," and a "mild protrusion of the L4-5 disk" after MRI scans. Id. at 195. Evidence of "injury to the thoracic spine" led Dr. Mathews to order an MRI that, upon review on April 4, 2006, indicated "a small herniation in the mid-thoracic spine with slight cord indentation." Id. at 194, 196. Dr. Colao corroborated Dr. Mathews's report on September 12, 2006, finding "a herniated disc in [Plaintiff's] thoracic area and also a herniated lumbar disc at L4-L5." Id. at 236. Upon examination on October 24, 2006, Dr. Ammerman noted that Plaintiff "has evidence of post traumatic cervical and lumbar strain with radiculopathy." Id. at 263. He prescribed cervical and lumbar epidural blocks to address the pain. Id.

By disregarding this evidence, the ALJ found that Plaintiff's allegations regarding the "intensity, persistence and limiting effects" of her symptoms were not credible. Id. at 24-25. Magistrate Judge Kay found that the "ALJ emphasized (by using bold type) [portions of] certain medical records that supported his aforementioned determination." R&R at 18. Not surprisingly, the Magistrate Judge concluded that "there is substantial evidence that contradicts the ALJ's characterization of Plaintiff's injuries as 'mild' and her treatment as 'routine and conservative' and his resulting conclusion that 'claimant's limitations may not have been as severe as she alleges.'" Id. at 20 (citing AR at 25). ("Conservative," in this context, refers to non-surgical treatment. See R&R at 19; AR at 190.)

Indeed, the conclusion of the ALJ is in tension with both the totality of the medical record and the controlling SSR. He failed to evaluate the comprehensive record when evaluating the severity of Plaintiff's symptoms. An ALJ must "explain sufficiently the weight he has given to certain probative items of evidence" so the reviewing court is not "left guessing as to how the ALJ evaluated probative evidence." Apfel, 118 F. Supp. 2d at 13 (citations omitted). Absent such explication, the ALJ's representation of the record has the appearance of a "cherry-picked" subset of medical evidence against which Plaintiff's symptoms were judged. Such reliance on selective evidence appears to be exactly what happened here. Because the Court finds that the objective medical evidence does appear to support Plaintiff's statements regarding "the intensity, persistence, and limiting effects" of her symptoms, the ALJ's findings to the contrary are not supported by substantial evidence.

Yet even if Plaintiff's statements were not fully supported by the medical record, SSR 96-7p specifically states that "an individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may

<u>not be disregarded</u> solely because they are not substantiated by objective medical evidence."

SSR 96-7p at *1 (emphasis added); <u>see</u> 20 C.F.R. § 404.1529(c)(2). SSR 96-7p delineates a host of factors "that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements." SSR 96-7p at *3; 20 C.F.R. § 404.1529(c)(3); <u>see</u> <u>Grant v. Astrue</u>, 857 F. Supp. 2d 146, 156 (D.D.C. 2012) ("The ALJ must weigh a number of specific factors in assessing a claimant's credibility."). These factors are:

> (1) The individual's daily activities; (2) The location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms. . . ; and (7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p at *3; <u>see</u> 20 C.F.R. § 404.1529(c)(3). Therefore, if Plaintiff's statements did not conform to the medical record, that alone would be insufficient to find them not credible.

Instead of engaging in an analysis under this framework, the ALJ employed a pre-determined RFC to substantiate his finding on credibility:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are <u>inconsistent with the above residual functional capacity assessment</u>.

AR at 25 (emphasis added). In so finding, he reversed the credibility-assessment process: SSR 96-7p requires that an ALJ assess a claimant's statements about the limiting effects of her symptoms in determining RFC; consistency with the RFC assessment cannot, therefore, be the

determinative factor in a process set out to assess RFC.  See Bjornson v. Astrue, 671 F.3d 640, 645 (7th Cir. 2012) (noting this "backward" analysis of credibility arises from use of a "boilerplate" template by SSA ALJs, by which a pre-determined RFC assessment is later justified by a credibility finding).

Defendant contends that, even if the ALJ erred, Plaintiff cannot show prejudice.  See Def.'s Obj. at 2.  The Court disagrees.  The ALJ characterizes the medical record in a way that makes Plaintiff's statements appear inconsistent, leading to an adverse credibility finding that directly influences her RFC.  Because the totality of the record casts her complaints in a very different light – indeed, as supported by the medical record – it could very well lead to a different result, and prejudice does potentially lie.  The Court, therefore, agrees with the Magistrate Judge's recommendation that, upon remand of the RFC issue, the ALJ shall re-evaluate "Plaintiff's subjective statements regarding her symptoms and the medical records in this case."  R&R at 26.

## IV.  Conclusion

For the reasons set forth above, pursuant to Local Civil Rule 72.3(c), the Court shall adopt Magistrate Judge Kay's May 8, 2013, Report and Recommendation.  Pursuant to 42 U.S.C. § 405(g), the Court will issue a separate Order remanding the case to the SSA Commissioner for further proceedings consistent with this Opinion and the Report and Recommendation of the Magistrate Judge.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  June 28, 2013