# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SARAH A. PORTER,<br><br>    Plaintiff,<br><br>        v.<br><br>MICHAEL J. ASTRUE,<br><br>    Defendant. | Civil Action No. 11-2304 (JEB) |

## MEMORANDUM OPINION

Plaintiff Sarah Porter applied for supplemental security income (SSI) benefits on April 13, 2006, alleging that she had become disabled from a car accident that affected her ability to stand and caused her constant pain. See Porter v. Colvin (Porter I), No. 11-2304, 2013 WL 3244808, at *1 (D.D.C. June 28, 2013). After being denied benefits, she sued the Commissioner of the Social Security Administration. See id. This Court ultimately adopted the Report and Recommendation of Magistrate Judge Alan Kay and remanded the case to the SSA for further proceedings because the SSA had not placed proper weight on Plaintiff's "subjective statements regarding her symptoms," the "medical records in [the] case," and the "opinions of Plaintiff's treating sources." See id. at *3.

Plaintiff's counsel now move for an award of attorney fees pursuant to the Equal Access to Justice Act (EAJA), which "directs a court to award 'fees and other expenses' to private parties who prevail in litigation against the United States if, among other conditions, the position of the United States was not 'substantially justified.'" Commissioner, INS v. Jean, 496 U.S. 154, 155 (1990) (quoting 28 U.S.C. § 2412(d)(1)(A)). The parties here have agreed that Plaintiff is a

1

prevailing party entitled to some fees and costs and that the Government's position in the litigation was not substantially justified. See Mot. at 2; Opp. at 1; Jean, 496 U.S. at 155-56. Yet despite this agreement, the exact amount due remains in dispute. The Government advocates for fees and costs of at most $6,603.64, while Plaintiff, after considering the Government's position, requests a total of $11,694.01. See Opp. at 9; Reply at 7. Having waded through the multitude of issues presented in this fee-calculation exercise, the Court concludes Plaintiff is entitled to $9,782.96.

**I.    Analysis**

In determining the proper amount of fees and costs, the Court must consider no fewer than six separate issues: whether a cost-of-living adjustment is warranted, the appropriate Consumer Price Index to use, the correct cost-of-living measure, the baseline for the CPI measurement, the number of hours that are reasonable, and the costs involved. Only after these determinations are made will the Court be in a position to multiply the correct number of hours by the appropriate hourly rate to arrive at the amount of fees owed, to which costs may then be added. The Court will address each issue in turn.

    A.  Adjustment for the Cost of Living

Attorney fees under the EAJA have been capped by Congress; as of March 29, 1996, this statutory cap was placed at $125 per hour "unless the court determines that an increase in the cost-of-living . . . justifies a higher fee." 28 U.S.C. § 2412 (d)(2)(A). Courts have often found that an increase in the statutory cap is warranted where the cost of living has increased relative to the cap. See, e.g., Role Models America, Inc. v. Brownlee, 353 F.3d 962, 969 (D.C. Cir. 2004) (granting cost-of-living adjustment where Consumer Price Index had increased 14.6% relative to cap); Cooper v. R.R. Retirement Bd., 24 F.3d 1414, 1417 (D.C. Cir. 1994) (increasing statutory

rate where CPI had increased by 51.8% relative to cap); Hirschey v. FERC, 777 F.2d 1, 5 (D.C. Cir. 1985); Nat'l Law Ctr. on Homelessness and Poverty v. U.S. Dep't of Veterans Affairs, 799 F. Supp. 148, 157 n.10 (D.D.C. 1992).

Plaintiff, in support of an upward departure from the statutory rate, points to the CPI in Washington, D.C., which has risen by more than 52% since Congress increased the hourly cap in 1996. See Reply at 2. The Government responds by citing two cases it claims support the position that statutory fees are adequate here. See Opp. at 3-4. Neither, however, directly addressed the issue of the cost of living; instead, they struck down fee increases based on the particularized knowledge of an attorney. See Truckers United for Safety v. Mead, 329 F.3d 891, 896-97 (D.C. Cir. 2003); In re Sealed Case 00-5116, 254 F.3d 233, 235-36 (D.C. Cir. 2001). Given that the cost of living here has risen significantly since the statute was enacted, and that the statute itself expressly provides for cost-of-living adjustments, the Court concludes that an increase is proper.

    B. Local, Regional, or National Consumer Price Index

Having decided to account for a rise in the cost of living, the Court must next determine whether to use a local, regional, or national CPI, all of which measure inflation from a baseline of $100 at a set starting date. Plaintiff urges the Court to use the market rate for the "relevant community," which, Plaintiff claims, is "the one in which the district court sits." Reply at 3 (citing Donnell v. United States, 682 F.2d 240, 251 (D.C. Cir. 1982)); see also Pereira v. Astrue, 739 F. Supp. 2d 267, 272 (E.D.N.Y. 2010) (adjusting using CPI for the "relevant community"). Plaintiff thus requests the regional CPI for DC-MD-VA-WV, while Defendant argues for the national CPI.

As observed by the court in Mannino v. West, 12 Vet. App. 242 (Vet. App. 1999), there has been a "split of authority" on the question of which CPI to use. Id. at 243. Those advocating for use of a local or regional CPI conclude that "in view of the diverse nature of various cities' and regions' economies," the "fairer course" is to use the cost of living "actually experienced" by the applicant. Cox Cost. Co. v. United States, 17 Cl. Ct. 29, 37 (1989). Those courts recognize that using a local or regional CPI avoids the pitfalls of using the national CPI: "(1) Depriving an attorney of the actual increase in the CPI where he works when that increase (if measured locally or at least regionally) is greater than the increase in the national CPI; or (2) creating a windfall where the national CPI increase is greater than either the applicable local or regional CPI increase." Mannino, 12 Vet. App. at 243. On the other side of the argument are those who point to the statutory language allowing for adjustment based on the cost of living, not a cost of living. See Jawad v. Barnhart, 370 F. Supp. 2d 1077, 1085 (S.D. Cal. 2005).

It appears that most of the courts in the circuit use the regional CPI, regardless of the fact that it is published only bi-monthly. See Wilkett v. ICC, 844 F.2d 867, 875 (D.C. Cir. 1988) (noting regional cost of living increased 27.77% and increasing cap by this amount); Hirschey, 777 F.2d at 5 n.24 (noting regional cost of living increased 19.6% and increasing cap by this amount); Nat'l Ass'n of Mfrs. v. Dept. of Labor, 962 F. Supp. 191, 198 (D.D.C. 1997) (using regional CPI); Masonry Masters, Inc. v. Nelson, 105 F.3d 708, 710 (D.C. Cir. 1997) (citing Wilkett, but not noting which CPI was used).

This Court, therefore, will use the regional CPI in calculating the fees owed to Plaintiff, as it most accurately reflects the increase in the cost of living experienced by the attorneys in this particular region. See Cox, 17 Cl. Ct. at 37.

C. Yearly or Monthly Cost-of-Living Adjustments

Now that the Court has settled on the regional CPI, there is still a debate over whether to adopt a yearly CPI or to calculate the rate for each month and apply the rate to the work done in that month. The Government suggests using the annual CPI for the year 2012 in performing calculations for work done in that year, and it takes the average of May and June's CPI (presumably because these were the months in which work was done) for work completed in 2013. See Opp. at 4. Plaintiff, in contrast, calculates the cost-of-living adjustment for each month in which work was billed based on the corresponding CPI for that month and then applies it to the hours billed for that month. See Reply at 4.

There has again been some variation in how courts proceed on this matter. Those using the yearly rate often state that the monthly calculation is "unnecessarily burdensome." Jawad, 370 F. Supp. 2d at 1090. One court weighed the cost of using a single multiplier for the entire year (which could result in "material inaccuracies") with that of using a monthly multiplier (which could result in an "unwarranted" level of computational difficulty), ultimately deciding that using the yearly multiplier "strike[s] a reasonable balance between accuracy and ease of calculation." Gates v. Barnhart, 325 F. Supp. 2d 1342, 1347 (M.D. Fla. 2002). Other courts have similarly not broken down rates on a month-by-month basis, although some have opted for different ways of arriving at the yearly rate. See Conservation Force v. Salazar, 916 F. Supp. 2d 15, 26 (D.D.C. 2013) (using CPI rate "in a certain month of that year," instead of month-by-month, although attorneys had not broken out hours, even by year); Nat'l Ass'n of Mfrs., 962 F. Supp. at 198 (using approximate month and year when services were rendered); Wilkett, 844 F.2d at 875 (using the month in which "most of the work was done" to calculate the adjusted rate); Nong v. Reno, 28 F. Supp. 2d 27, 30 (D.D.C. 1998) (stating it used the "month when the

5

services were rendered," but instead using the last month of the year in which services were rendered).

At least one court has rejected the yearly calculation where the monthly CPI is available, though that court also could not seem to find any authority rejecting the monthly adjustments proposed by counsel. See Chargois v. Barnhart, 454 F. Supp. 2d 631, 635 (E.D. Tex. 2006). In Chargois, the court balanced the argument that the monthly method was "*de trop*," and that "the court [was] unaware of anyone else who [was] fortunate enough to receive cost-of-living adjustments more often than annually" with the notion that though it was more tedious, the monthly method "does no violence" to congressional intent to provide the cost-of-living adjustment, is more precise, and is "even-handed" because these monthly calculations "are just as likely to produce a lower fee as a higher fee." Id. A quick glance at the table provided by Plaintiff (missing every other month) demonstrates this fact — the regional CPI for each period of course dances around the yearly average of $150.212. See Reply, Exh. A; Summary of Annual and Semi-Annual Indexes, available at http://www.bls.gov/ro3/fax_9125.htm. Other courts have followed this monthly CPI system without complaint as to the difficulty of calculation. See Gonzalez v. United States, 44 Fed. Cl. 764, 771 (1999) (calculating fee cap for each individual month); JGB Enterprises, Inc. v. United States, 83 Fed. Cl. 20, 33 (2008).

Given the low number of hours billed by both Plaintiff attorneys in each month and the close relationship of each monthly CPI to the annual CPI, it seems unnecessary to break this calculation down into monthly determinations. See Reply, Exh. C (for instance, Michael Eisenberg billed only 0.1 hours in April, May, and June of 2012). To calculate the adjustment for each attorney for each month does not seem to strike the balance that Gates sought in using the yearly calculation – that is, it creates a burden on the court without any outsized impact on

the funds ultimately paid. The yearly regional CPI of $150.212 will therefore be used for 2012. See Summary of Annual and Semi-Annual Indexes, available at http://www.bls.gov/ro3/fax_9125.htm. For 2013, the Court will maintain consistency in attempting to use as close to a yearly average as possible, unlike the methodology used by Defendant (who averaged only the two months in which work was billed). Courts have held that where a yearly CPI is not available, the court is to average the months for which a CPI is available. See Jawad, 370 F. Supp. 2d at 1091; Knudsen v. Barnhart, 360 F. Supp. 2d 963, 974 (N.D. Iowa 2004); Gates, 325 F. Supp. 2d at 1347. This Court will therefore use the regional average of the available months of 2013, $151.798, for hours billed in 2013. See Summary of Annual and Semi-Annual Indexes.

  D. Baseline Measurement

  The next step is to determine the baseline by which the regional CPI — *i.e.*, $150.212 for 2012 and $151.798 for 2013 — should be divided, thereby providing a multiplier for the $125 statutory cap to reach the adjusted hourly rate. Common sense might seem to dictate $100 as the baseline, but that is not automatically the case. Although Congress amended the EAJA to provide the $125 hourly rate in March of 1996, the regional CPI began at $100 in November of 1996, when the CPI was first calculated. If the calculation here begins earlier than November of 1996, the baseline amount decreases; if it starts later, the number increases.

  Both Defendant and Plaintiff suggest using March of 1996, the month that the EAJA was amended to set the new baseline $125 hourly rate. See Opp. at 4; Reply at 4. Although some courts have used October 1981 — the month of the EAJA's original enactment — as a baseline, see, e.g., Nelson, 105 F.3d at 710; Nat'l Ass'n of Mfrs., 962 F. Supp. at 198; Hirschey, 777 F.2d

7

at 5, given the parties' agreement on March 1996, the Court will accede to this approach and avoid further complexity.

There is a slight problem, however: the regional CPI for March 1996 is not available. See Reply at 4 n.1. Plaintiff suggests using an extrapolation based on the percentage change in the national CPI between March 1996 and November 1996, the latter being the first month for which there is regional CPI data. See id. (yielding a baseline figure of $98.18). This approach seems unnecessarily complicated. At least two courts suggest simply using the CPI for the following month. See Shu Chen v. Slattery, 842 F. Supp. 597, 601 (D.D.C. 1994) (using November, when October was unavailable); Nat'l Ass'n of Mfrs., 962 F. Supp. at 198 n.14 (following Shu Chen by using the CPI figure for November, when October 1981 not available). In the case at hand, starting with March 1996, the "next month" with data according to Plaintiff's chart is November 1996, which, as already discussed, carries a regional CPI of $100. See Reply, Exh. A.

Given that both parties are in agreement on the March 1996 date and that it appears that some courts (though not many within the D.C. Circuit) rely on this date as a baseline, the Court will concur and use the "next month" of November. The baseline is therefore $100.

Based on the foregoing, the Court then takes the statutory rate, multiplies it by the regional CPI from the relevant time period, and then divides by the baseline rate as follows:

> Billable rate for 2012 = $125 x $150.212 / $100 = $187.765
>
> Billable rate for 2013 = $125 x $151.798 / $100 = $189.748

E. Reasonable Hours Billed

Now that the rate has been determined, the Court must calculate the time reasonably billed. As there is some dispute as to how many hours each of Plaintiff's two attorneys may

appropriately bill here, the Court will consider Ms. Schabacker's and Mr. Eisenberg's hours separately.

Plaintiff requests a total of 35.1 billable hours for Ms. Schabacker, while Defendant believes she merits 30.1 hours. See Reply at 5; Opp. at 6 ("DeAnna Schabacker has 16.4 compensable hours in 2012 and 13.7 compensable hours in 2013."). By calculations based on Plaintiff's Reply Exhibit C, however, it seems that Ms. Schabacker is actually due, according to Plaintiff's chart, 36.5 billable hours (an undisputed 16.4 hours billed in 2012 and 13.7 billable hours in 2013 plus a disputed 6.4 hours billed in 2013). See Reply Exh. C at 1. This leaves a balance of 6.4 hours of Ms. Schabacker's in dispute, which is billed as "reply to agency's response to EAJA fee application". Id. These hours have not been addressed by the Government, as they were billed after it filed the Opposition. Plaintiff asserts that Counsel has incurred "well over eight additional hours of billable time" to prepare the Reply, but has reduced the amount to 6.4 hours, apparently in anticipation of pushback by Defendant. See Reply at 5.

"[A]n applicant is only entitled to an award for time reasonably expended," and the fee application must contain "sufficiently detailed information . . . about the work done." Hawaii Longline Ass'n v. Nat'l Marine Fisheries Serv., No. 01-765, 2004 WL 2239483, at *2 (D.D.C. Sept. 27, 2004) (citing Nat'l Assoc. of Concerned Veterans v. Sec'y of Def., 675 F.2d 1319, 1327 (D.C. Cir. 1982)); see also Hensley v. Eckerhart, 461 U.S. 424, 434 (1983) ("The district court also should exclude from this initial fee calculation hours that were not 'reasonably expended.'"). To determine whether fees are reasonable, "courts ordinarily focus on two questions: (1) whether the attorneys charged a reasonable hourly rate and (2) whether the time attorneys logged on the case was reasonable – *i.e.*, did the attorneys waste or otherwise unnecessarily spend time on the matter." In re Donovan, 877 F.2d 982, 990 (D.C. Cir. 1989).

9

The Court, furthermore, has "wide discretion in reducing individual fee entries." Baldridge v. Nicholson, 19 Vet. App. 227, 241 (2005) (reducing billable hours by a total percentage, rather than particular hours); but see Giron v. Shinseki, No. 09-3251, 2012 WL 4856943, at *3 (Vet. App. Oct. 15, 2012) (reducing each disputed line item by particular amount).

How much of a reduction, if any, should the Court impose on Ms. Schabacker's hours? The court in Hensley notes that "[t]here is no precise rule or formula for making [reduction] determinations . . . . The court necessarily has discretion in making this equitable judgment." 461 U.S. at 436-37. Hensley then outlines two methods of reducing fees to reflect the proper amount of work awardable: eliminating the fees for those hours spent on unsuccessful claims that are wholly separate from successful claims, or calculating a general reduction for those unsuccessful claims related to successful claims. See id.; see also Commissioner, INS v. Jean, 496 U.S. 154, 163 n.10 (1990) (holding that the Hensley analysis applies to "fees-on-fees" recovery claims).

Plaintiff's Reply regarding fees and costs was partly unsuccessful. The Court rejected her arguments for a monthly calculation of fees owed, as well as the baseline value to use, and, as the Court will shortly detail, she has not entirely prevailed in her position on Lexis costs owed. While the Court will take into consideration Plaintiff's assertion that Ms. Schabacker has in reality spent upwards of eight hours on the Reply, while billing only 6.4 hours, it will lower this number further to account for the fact that some of that time was spent on ultimately unsuccessful claims. As it stands, the disputed 6.4 hours apparently account for the extensive calculations required in determining a monthly adjustment for billable hours, as well as the extrapolation used to arrive at an engineered CPI for the March 1996 baseline (taking up ¾ of a page in her Reply). See Reply at 4. Plaintiff also spends a page of her seven-page Reply dealing

10

with whether or not researching costs are awardable generally, rather than addressing Defendant's argument that the bill lacked sufficient clarity regarding the costs. See Reply at 6-7. In light of the foregoing, the Court will reduce the disputed hours from 6.4 to 4.0 hours total, given that the Reply still succeeded in arguing for a cost-of-living adjustment and a regional CPI, and because Ms. Schabacker still had to draft the brief. The total number of billable hours for Ms. Schabacker thus is 34.1 hours.

Applying the yearly per-hour rates to these billable hours yields $3,079.35 billed in 2012 (16.4 hours x $187.765 per-hour), and $3,358.54 (17.7 hours x $189.748 per-hour) in 2013 for a total of $6,437.89.

Plaintiff additionally seeks 5.5 billable hours for Mr. Eisenberg, while Defendant will concede only 3.6 hours. See Reply at 5; Opp. at 7 (2.9 compensable hours in 2012 and .7 compensable hours in 2013). It seems, however, that Defendant has also conceded 1.0 hour of time spent preparing the original EAJA application, bringing the Government's total requested billable hours up to 4.6. See Opp. at 7. The disputed .9 hours is billed for work spent on EAJA fee calculations. The question, then, is whether 1.9 hours is a reasonable amount of time to have spent on the Motion. Given that the bulk of the original EAJA fee pleading was based on what Defendant characterizes as an "apparent misunderstanding or lack of awareness of the EAJA law on special factor adjustments for hourly rates," and that over one quarter of the brief was spent on lodestar considerations, rather than discussing cost-of-living adjustments, a reduction in time billed is warranted. See ECF 28; Opp. at 7. A reduction to 1.0 hour accounts for the valid arguments made and required to be made by Plaintiff regarding a showing that the Government was not substantially justified in its position. See Mot. at 1; Reply at 5-6.

11

4.6 billable hours are therefore attributable to Mr. Eisenberg. Once again applying the adjusted hourly rate to the hours billed, Plaintiff is entitled to $544.52 in 2012 (2.9 hours billed x $187.765) and $322.57 in 2013 (1.7 hours billed x $189.748) for a total of $867.09.

When added to Ms. Schabacker's 34.1 hours, Plaintiff is entitled to fees for 38.7 billable hours (19.3 hours in 2012, and 19.4 hours in 2013) or $7,304.98.

      F.  <u>Costs</u>

It is undisputed that a plaintiff may receive an award of costs for legal research; the issue at hand is how much of this cost the Government must pay. <u>See, e.g.</u>, <u>Hirschey</u>, 777 F.2d at 6 (holding computer-research charge compensable); <u>Norton</u>, 407 F. Supp. 2d at 165 (awarding costs of $356.68 for Lexis research); <u>Nat'l Veterans Legal Services Program v. Dep't of Veterans Affairs</u>, No. 96-1740, 1999 WL 33740260, at *6 (D.D.C. April 13, 1999) (awarding $1,424.87 for computerized legal research upon a finding from Judge Facciola that "plaintiff had sufficiently explained to defendant the purposes of such costs" and that they were reasonable).

Defendant (correctly) argued originally that Plaintiff had not adequately enumerated the costs sought in a reasonable manner, but Plaintiff appears to have somewhat corrected this mistake by providing Reply Exhibit D, which details the cost of each search, single document retrieval, and Shepard's legal-citation service. On the one hand, counsel for Plaintiff did more than what was done in <u>Owen v. United States</u>, 861 F.2d 1273, 1275 (Fed. Cir. 1988), where the court held insufficient Plaintiff's listing of items summarily such as "senior counsel, research and factual investigation and brief preparation." On the other hand, the Court is unable to look at the specific research done here to determine whether it was relevant or simply "background research." <u>See</u> <u>Chesser v. West</u>, 11 Vet. App. 497, 503-04 (1998) (looking to whether topic of research was connected to subject matter of claims at issue in deciding to reduce number of

12

hours of itemized research by one third, and disallowing billing for any background research). As the court in Brownlee noted, "Supporting documentation must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended." 353 F.3d at 970 (citations omitted).

While Plaintiff has provided more detailed information such that the Court may determine the billing procedures used to reach the total amount of $3,234, see Reply at 7, the Court still finds a deduction necessary. In the Court's view, it was unreasonable for Plaintiff's counsel to spend $2,212 on the Reply, when only $1,022 was spent throughout the rest of the case. Id. Given the apparent lack of understanding of the statutory and cost-of-living calculations in Plaintiff's original brief, it is reasonable to assume that at least some of this Lexis research was background research, which may not be charged to the Government. See Chesser. There is no strict guideline as to what exactly a reasonable deduction may be, but this court will reduce the amount charged in researching the Reply by 50% to $1,106. Baldridge, 19 Vet. App. at 241. This brings the total costs to $2,478 ($2,128 for Lexis costs and $350 for the filing fee).

**II.     Conclusion**

For the foregoing reasons, the Court finds that Plaintiff is entitled to $2,478 in costs plus attorney fees in the amount of $7,304.98. The fees were calculated by taking the regional CPI rate for 2012 ($150.212) or 2013 ($151.798), dividing by the baseline $100 for November 1996, then multiplying by the statutory $125 per hour to yield the new hourly rate for each year ($187.765 for 2012, and $189.748 for 2013). Each hourly rate was then multiplied by the corresponding number of hours billed for that year (19.3 in 2012, and 19.4 in 2013). Costs were

calculated based on reasonable research and filing fees. The Court, therefore, ORDERS that

Plaintiff be AWARDED fees and costs in the amount of $9,782.96.


                                                                                                  */s/ James E. Boasberg*
                                                                                                  JAMES E. BOASBERG
                                                                                                  United States District Judge

Date:  November 12, 2013